J-S51034-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JEREMIAH LEE METCALF, | : | |
| | : | |
| Appellant | : | No. 642 MDA 2019 |

Appeal from the PCRA Order Entered April 16, 2019
in the Court of Common Pleas of Cumberland County
Criminal Division at No(s):  CP-21-CR-0004073-2016

BEFORE:  PANELLA, P.J., GANTMAN, P.J.E., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:                **FILED OCTOBER 29, 2019**

Jeremiah Lee Metcalf ("Metcalf") appeals, *pro se*, from the Order denying his Petition for relief filed pursuant to the Post Conviction Relief Act ("PCRA").  **See** 42 Pa.C.S.A. §§ 9541-9546.  We affirm.

The trial court previously set forth the relevant factual background as follows:

> On December 9, 2019, the owner of a Shippensburg lumberyard alerted officers to a suspicious vehicle.  The vehicle was parked in his storage lot with the engine running.  He estimated that it had been sitting there for an hour or more before he decided to call the police.
>
> Officer [Kimberly] Wolfe [("Officer Wolfe")] of the Shippensburg Police Department was the first officer to arrive on scene.  [Officer Wolfe] met with the owner in the alley adjacent to the lot.  The owner directed [Officer Wolfe] to where the vehicle was parked.  By that time, Officer [Andrew] Cramer [("Officer Cramer")] had also arrived.  Both officers drove their cruisers into the storage lot.  The lot itself contained rows of lumber[,] which created three separate lanes of travel within the yard.  All three lanes met so as to form a circle around the entire lot with a center

lane dividing it.  Officer Wolfe pulled into the lane furthest to the right and parked behind the white vehicle.  Officer Cramer parked his cruiser in the center lane.

Both officers approached the vehicle.  They found [Metcalf] in the passenger seat.  He appeared to be passed-out in the vehicle with the engine still running.  One officer opened the driver-side door to wake up [Metcalf].  They noticed that [Metcalf] was only dressed from the waist down and did not have on any shoes.  The other officer opened the passenger door to directly engage with [Metcalf].  [Metcalf] acted confused and his responses to police questioning did not make sense.  Officer Cramer then asked [Metcalf] to step out of the vehicle.  After putting on a hoodie and his shoes, [Metcalf] complied.  [Metcalf] consented to a search of his vehicle, at which time the officers asked him to wait off to the side.

The police dash-cam recorder showed the officers as they performed their search of [Metcalf's] vehicle.  As they searched, [Metcalf] sprinted toward Officer Cramer's police cruiser.  Before the officers were able to stop him, [Metcalf] took off in the cruiser. As the cruiser headed down the left lane toward the exit, Officer Wolfe jumped in her cruiser.  Officer Cramer ran down the center lane, parallel to [Metcalf] in the left lane.  [Metcalf], in the cruiser, and Officer Cramer, on foot, neared the front of the lot at the same time.  Officer Cramer raised his firearm and directed [Metcalf] to stop.  [Metcalf] failed to stop[,] and drove the cruiser in Officer Cramer's direction.  Fearing that [Metcalf] might strike him, Officer Cramer fired shots at the cruiser.  [Metcalf] quickly veered away from him and off toward the exit.  Unbeknownst to the officers, [Metcalf] had been struck by one of the shots.

Officer Wolfe followed [Metcalf] through Shippensburg.  At times, [Metcalf] was clocked in excess of sixty-five miles per hour (65 MPH) in areas where the posted speed limit was thirty-five miles per hour (35 MPH).  In addition, the chase took place in the afternoon while numerous pedestrians and vehicles were out and about.  During the chase, [Metcalf] had stopped the cruiser on at least two occasions.  Each time[,] as Officer Wolfe exited her cruiser to approach [Metcalf], he took off again.  [Metcalf] was finally stopped as other law enforcement units arrived.  Upon seeing that [Metcalf] was in need of medical assistance, the officers administered first-aid and called for paramedics.

Trial Court Opinion, 5/10/18, at 1-3.

A jury found Metcalf guilty of fleeing or attempting to elude a police officer, unauthorized use of an automobile, and recklessly endangering another person ("REAP").[1]  Additionally, the trial court found Metcalf guilty of the summary offense of driving under suspension (relating to driving under the influence).[2]  Following the preparation of a pre-sentence investigation report, the trial court sentenced Metcalf to an aggregate prison term of 27 to 108 months, plus the costs of prosecution.[3]

Metcalf, *pro se*, filed the instant timely PCRA Petition on September 13, 2018, his second.[4]  The PCRA court appointed Metcalf counsel, after which Metcalf filed a Motion to Proceed *Pro Se*.  Following a ***Grazier***[5] hearing, the PCRA court granted Metcalf leave to proceed *pro se*, vacated PCRA counsel's appointment, and appointed standby counsel.  The PCRA court conducted an

_____

[1] 75 Pa.C.S.A. §§ 3733, 3928; 18 Pa.C.S.A. § 2705.

[2] 75 Pa.C.S.A. § 1543(b)(1).

[3] For his driving under suspension conviction, the trial court also sentenced Metcalf to a 60-day prison term, to be served in county prison, and imposed a $500.00 fine.  The trial court granted Metcalf 60 days of time credit on this conviction.

[4] Metcalf had previously filed a PCRA Petition while his direct appeal was pending.  The PCRA court dismissed Metcalf's first Petition for lack of jurisdiction, and Metcalf subsequently withdrew his direct appeal in order to pursue post-conviction relief.

[5] ***See Commonwealth v. Grazier***, 713 A.2d 81 (Pa. 1988).

evidentiary hearing on January 3, 2019, and subsequently denied Metcalf's

Petition. Metcalf filed a timely, *pro se* Notice of Appeal and a Pa.R.A.P.

1925(b) Concise Statement of matters complained of on appeal.

Metcalf now raises the following issues for our review:

I. Did the PCRA court err in determining ineffective assistance of counsel was not demonstrated in relation to counsel failing to investigate and subsequently present the insanity defense[?]

II. Did the PCRA court err in not finding prejudice on [Metcalf's] claim of prosecutorial misconduct concerning inflammatory remarks in concluding the jury could have found [Metcalf] guilty during trial based on a sole finding that a high-speed chase had occurred[?]

III. Did the PCRA court err in denying additional claims [Metcalf] raised in his Petition[,] without allowing [Metcalf] to fully develop those claims on direct examination[?]

Brief for Appellant at 4.

"In reviewing the denial of PCRA relief, we examine whether the PCRA

court's determination is supported by the record and free of legal error."

***Commonwealth v. Reid***, 99 A.3d 470, 481 (Pa. 2014) (citation and

quotation marks omitted). "The PCRA court's findings will not be disturbed

unless there is no support for the findings in the certified record. The PCRA

court's factual determinations are entitled to deference, but its legal

determinations are subject to our plenary review." ***Commonwealth v. Nero***,

58 A.3d 802, 805 (Pa. Super. 2012) (internal citations and quotation marks

omitted).

In his first claim, Metcalf argues that trial counsel was ineffective for failing to investigate and present an insanity defense. *See* Brief for Appellant at 10-20. Metcalf claims that trial counsel decided not to pursue an insanity defense based on his belief that any discussion about mental health could be detrimental to Metcalf's case. *Id.* at 13, 15. Regarding whether he suffered prejudice as a result of trial counsel's failure, Metcalf asserts that "it is reasonable that the jury would not have found [Metcalf] mentally culpable…." *Id.* at 19.

The PCRA permits relief when a conviction is the result of "[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S.A. § 9543(a)(2)(ii).

> It is well-established that counsel is presumed to have provided effective representation unless the PCRA petitioner pleads and proves all of the following: (1) the underlying legal claim is of arguable merit; (2) counsel's action or inaction lacked any objectively reasonable basis designed to effectuate his client's interest; and (3) prejudice, to the effect that there was a reasonable probability of a different outcome if not for counsel's error. The PCRA court may deny an ineffectiveness claim if the petitioner's evidence fails to meet a single one of these prongs. Moreover, a PCRA petitioner bears the burden of demonstrating counsel's ineffectiveness.

*Commonwealth v. Franklin*, 990 A.2d 795, 797 (Pa. Super. 2010) (citations omitted). "A PCRA petitioner must address each of these prongs on appeal." *Commonwealth v. Wholaver*, 177 A.3d 136, 144 (Pa. 2018).

> In order to prevail on an insanity defense, [an a]ppellant must prove by a preponderance of the evidence that, at the time

he committed the offense, due to a defect of reason or disease of mind, he either did not know the nature and quality of the act or did not know that the act was wrong.

*Commonwealth v. Smith*, 17 A.3d 873, 901 (Pa. 2011); *see also Commonwealth v. Hughes*, 865 A.2d 761, 788 (Pa. 2004) (stating that "[a] defense of insanity acknowledges commission of the act by the defendant, while maintaining the absence of legal culpability.").

Metcalf states generally that, at the time of the incident, he had been "suspended from his psychiatric medications" and "suffers from mental abnormalities." Brief for Appellant at 17, 20. However, the PCRA court stated in its Opinion that "at the evidentiary hearing, [Metcalf] failed to demonstrate that such a defense existed. [Metcalf] did not present medical evidence, nor did he present testimony of an expert who trial counsel could have used during trial to support such a defense." PCRA Court Opinion, 5/10/19, at 2. Metcalf similarly failed to identify any specific medical evidence that would support his claim in his appellate brief. Additionally, Metcalf fails to assert that he "did not know the nature and quality of the act or did not know that the act was wrong." *Smith*, 17 A.3d at 901. Because Metcalf has failed to establish that his underlying claim is of arguable merit, we conclude that trial counsel was not ineffective for failing to raise an insanity defense.

In his second claim, Metcalf contends that trial counsel improperly failed to object to the following statements, made by the Assistant District Attorney during opening and closing arguments:

- "You have a job to do, and it really boils down to deciding the credibility of [Metcalf] versus the police officer in this case…." N.T., 9/14/17, at 155.

- "Think about that for a second if you were walking along the street and you see this coming. Think about that if your children or your family members are out along that street and you see this coming." *Id.* at 157.

- "Unfortunately, from our common experience in the terrorist incidents that have happened over in France, and even here in our country, where an individual was mowed down and killed by a vehicle, we all know that a vehicle can be a deadly weapon." N.T., 9/13/17, at 16.

Brief for Appellant at 21-22.

"[I]neffectiveness claims stemming from a failure to object to a prosecutor's conduct may succeed when the petitioner demonstrates that the prosecutor's actions violated a constitutionally or statutorily protected right…."

***Commonwealth v. Tedford***, 960 A.2d 1, 29 (Pa. 2008). Additionally,

> [c]omments by a prosecutor constitute reversible error only where their unavoidable effect is to prejudice the jury, forming in their minds a fixed bias and hostility toward the defendant such that they could not weigh the evidence objectively and render a fair verdict. The prosecution's statements are unobjectionable if they are based on the evidence or proper inferences therefrom, or represent mere oratorical flair.

*Id.* at 33 (citations and quotation marks omitted).

The PCRA court concluded, and we agree, that Metcalf failed to establish that he was prejudiced as a result of trial counsel's failure to object to each of the above statements. ***See*** PCRA Court Opinion, 5/10/19, at 2-3. Metcalf fails to explain how he believes the outcome of the proceedings would have been different if not for the cited statements made by the prosecutor. ***See***

***Franklin***, ***supra***. Instead, Metcalf baldly states that it is "logical" to conclude that the comments prevented the jury from rendering a "true verdict." Brief for Appellant at 25. Additionally, the PCRA court correctly noted that the jury found Metcalf not guilty of the most serious charges he faced (*i.e.*, aggravated assault and aggravated assault of a police officer). ***See id.*** at 2; ***see also*** Order, 4/16/19, n.1 (stating that "[t]he compelling fact is that the jury acquitted [Metcalf] of the most egregious offenses alleged to have been *perpetrated against the officer*." (emphasis added)). Because Metcalf failed to establish that he was prejudiced by trial counsel's purported failure, he is not entitled to relief on this claim.

In his third claim, Metcalf asserts that the PCRA court erred in denying certain claims he raised in his Petition, without allowing him to develop those claims during the PCRA hearing. Brief for Appellant at 27. Metcalf argues that he attempted to raise a claim of ineffectiveness regarding trial counsel's failure to object to the trial court's jury instruction regarding REAP, which Metcalf believes broadened the scope of the REAP charge. ***Id.*** Additionally, Metcalf points to statements made by the magisterial district judge, and claims that the REAP charge was bound over for trial only as to Officer Cramer. ***Id.*** at 28. According to Metcalf, "there is no way of knowing whether the jury found [Metcalf] guilty of the [REAP] charge as linked to Officer Cramer or the general public…." ***Id.*** at 29.

Upon review, we conclude that Metcalf's underlying claim is belied by the record. The PCRA court stated during the PCRA hearing that Metcalf would

be afforded the opportunity to present each of his arguments concerning his ineffectiveness claims. N.T., 1/3/19, at 4-5 (wherein the PCRA court stated, "[y]ou can present all of the evidence you have. … We're talking about ineffective assistance of counsel, and you can present anything you want with regard to that claim…."). Metcalf also questioned trial counsel regarding the argument against the REAP charge that counsel had made during the preliminary hearing. *See id.* at 20-23. Metcalf twice attempted to refer to the magisterial district judge's stated reason for binding the REAP charge over for trial, and the PCRA court explained that such evidence was not relevant. *See id.* Nevertheless, the PCRA court permitted Metcalf to present a portion of the preliminary hearing transcript, wherein the magisterial district judge indicated he would bind over the REAP charge. *Id.* at 23; *see also id.* (admitting into evidence Petitioner's Exhibit No. 2). Metcalf thereafter restated his argument, and the PCRA court indicated its understanding. *Id.* at 23-24. Because the PCRA court did, in fact, permit Metcalf to develop his claim during the PCRA hearing, Metcalf is not entitled to relief on this claim.

Based upon the foregoing, we affirm the PCRA court's Order denying Metcalf's PCRA Petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/29/2019